IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PATRICIA CHESNEY,
        Plaintiff

                              Case No. 3:07-cv-34-KRG-KAP

MICHAEL ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,
        Defendant

**Report and Recommendation**

Recommendation

       Patricia Chesney appeals from the decision of the Commissioner of Social Security denying her application for disability benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C.§§ 401-33 and 1381-83f respectively. An ALJ found, on June 29, 2006, that Chesney was not disabled up to and including that date. Tr. 12-20. The Appeals Council denied review on December 15, 2006, Tr. 5-7, thus making the ALJ's findings the basis for the Commissioner's decision.

       Because substantial evidence support the ALJ's findings on which she based her conclusion that Chesney was not disabled the defendant's motion for summary judgment, docket no. 13, should be granted and the plaintiff's motion for summary judgment, docket no. 11, should be denied, thus affirming the Commissioner's decision that Chesney was not disabled through June 29, 2006.

Report

       Chesney was born on November 17, 1965, and is now 42 years old. Some of the record on this appeal was created when Chesney applied for benefits in July 2004, alleging that she had been

disabled since May 2003. Tr. 342-45 (SSI); 62-64 (disability). Chesney's application was apparently denied prior to the hearing stage in November 2004, and not appealed. Tr. 347. This appeal stems from Chesney's application for benefits in March 2005, claiming that she had become disabled as of January 30, 2005. Tr. 353 (SSI); 71-73 (disability). Because of the proximity of the applications the ALJ naturally considered Chesney's earlier history as well as records from after January 2005.

After the initial denial of her application Chesney, then 40 years old, testified about her conditions at a hearing before the ALJ on May 16, 2006. Based on Chesney's testimony and medical records, the ALJ found Chesney not disabled on June 29, 2006.

Chesney attended school in Northern Bedford County until halfway through tenth grade. Tr. 132-36. Cf. Tr. 314 (relating to Palmer that she withdrew in ninth grade). Chesney was in special education classes from seventh grade on, but her withdrawal from school was due to pregnancy, not for academic reasons. Although Chesney had one borderline I.Q. score (76) in third grade, her eighth grade score was low normal (88). There is no evidence that she would meet the listing for mental retardation.

Chesney's medical history reflected reports of several DUI arrests and one very serious accident in 2003 which she described as an attempted suicide by crashing her automobile into a tree. Chesney reported that she had tried to commit suicide on other

occasions as well. Tr. 312. Chesney was also convicted of assault in 2002 after she pointed a BB gun at a police office who had been called to her residence due to a domestic disturbance fueled by alcohol. See e.g. Tr. 246, 373.

About a year before the ALJ hearing, Chesney had been released from S.C.I. Muncy after about serving a sentence of about a year in prison (apparently for violating parole on the assault charge by committing the latest DUI.) In 2004, Chesney became pregnant and at the time of the ALJ hearing had recently had a baby. While pregnant, Chesney had worked for about five months as a dishwasher in a local restaurant, losing her job when the restaurant closed. Chesney was at the time of the hearing living in a residence with her child, whom she cared for without assistance, and one adult who apparently owned the residence and allowed Chesney to live there in exchange for maintaining the place.

After Chesney's earlier application for benefits, she had been evaluated by a psychiatrist, Edwin Tan, M.D. Tan reported Chesney was working 15 hours per week as a dishwasher, and noted that she was appropriately dressed and groomed and able to relate spontaneously to questions. Tan noted no symptoms of bipolar disorder, and evaluated Chesney as having an adjustment disorder complicated by her alcohol abuse (in remission), and thought she had low average intelligence. Tan gave Chesney a guarded prognosis but believed Chesney was competent to manage her affairs if she

3

refrained from drinking; he noted that Chesney was attending a drug and alcohol counseling program. Tr. 277-81.

Chesney was seen regularly from June 2004 until April 2005 at the Altoona Center for Mental Health Services by Quintin Dolphin, M.D., also a psychiatrist. Tr. 304-11. In February 2005, Dolphin diagnosed Chesney, consistent with his more extensive discussions in 2004, see Tr. 308-11, as having depression, panic disorder with agoraphobia, alcohol dependence, and borderline intelligence. In April 2005, Dolphin noted Chesney was doing "quite well" and had recently given birth. Dolphin observed that Chesney had a history of depression and might be "mildly depressed" as well as deprived of sleep. Dolphin only scheduled this meeting for 15 minutes and offered no evaluation as to whether Chesney's history of mild depression or her apparent good spirits might be expected to continue. Tr. 307. At another 15 minute meeting in June 2005, Chesney reported that she was "a little bit down at times" but that she did not want to start counseling for it. Tr. 337. Dolphin scheduled Chesney for routine follow up in three months, but there are no further records. It appears that Chesney only attended counseling as a result of being legally required to do so. Tr. 375.

As a result of her second application for benefits, Chesney was sent for a consultative examination on May 17, 2005, by Daniel Palmer, Ph.D., a psychologist. Palmer, like Tan, noted that Chesney appeared mildly depressed, and diagnosed Chesney as having

4

depression, panic disorder with agoraphobia, and alcohol abuse in remission. Tr. 312-18. Palmer's evaluation (a "poor" prognosis) was more pessimistic than Tan's, and Palmer also noted that Chesney appeared to function in the mentally retarded range. Tr. 316. Chesney told Palmer that she had panic attacks, hallucinations and believed that people were out to get her. Chesney also related her history of alcohol abuse and that she had been fired from a job because she was charged with a crime. Tr. 314. Palmer completed a psychiatric assessment form relating Chesney's symptoms to workplace demands and opined that Chesney would have moderate limitations in carrying out simple instructions and marked limitations in carrying out more complicated instructions or interacting with coworkers, and extreme limitations in appropriately dealing with pressure or changes in the workplace. Tr. 317-18.

At the hearing before the ALJ, Chesney testified that she had enjoyed working as a house cleaner and had been seeking work but that no one had hired her. In part Chesney believed this was due to her lack of a high school diploma or GED. Tr. 387-88. Chesney testified to panic attacks when the number of people around her increased rapidly, Tr. 376-78, but also that she left her previous employment as a dishwasher in a restaurant not because of an inability to do the work but because the business closed. Id. (business closed in December 2004); cf. Tr. 314 (business closed in January 2005).

The court's duty in reviewing a denial of disability benefits or SSI is to determine whether "substantial evidence," 42 U.S.C.§ 1383(c)(3), that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971), supports the ALJ's finding that Chesney is not disabled. Schaudeck v. Commissioner, 181 F.3d 429, 431 (3d Cir.1999) Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999); Hartranft v. Apfel, 181 F.3d 358, 359 (3d Cir.1999). The definition of disability, both for purposes of disability benefits and SSI, requires an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C.§§ 423(d)(1)(A), 1382c(a)(3)(A). And see Barnhart v. Walton, 535 U.S. 212, 218 (2002)(both the impairment **and** the resulting inability to work must last at least twelve months.)

My responsibility is to examine the whole record, not simply to confirm the existence of those pieces of evidence relied upon by the ALJ, see Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir.2003)(citation omitted), and I have therefore read the entire record, whether cited by counsel or not.

The ALJ used the five-step disability analysis set forth at 20 C.F.R.§§ 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The first two steps are not in dispute: (1)

6

Chesney was not working after her alleged onset date; and (2) she has severe impairments, including depression, panic disorder, and alcohol dependence. Tr. 14. At step three, the ALJ found that (3) Chesney's impairments, alone or in combination, do not meet the requirements of the disability listings at 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically Listing 12.04 (mood disorders) Listing 12.05 (mental retardation), or 12.06 (depression and anxiety disorders). Chesney asserts that she meets these three listings, see docket no. 12, Plaintiff's Brief at 5 and 10-11, but there is no argument in support of this claim: the issue is set out at page 5 of the plaintiff's brief with no discussion, and at pages 10-11 the entire discussion is an extended quote from a judicial decision without any mention of the record in Chesney's case. Counsel points to no evidence supporting the criteria of Listing 12.04 (which requires both medically documented persistent symptoms, and marked effects on social functioning or activities of daily living or repeated episodes of decompensation in work settings), Listing 12.05 (which requires I.Q. scores well below Chesney's lowest plus functional limitations not even claimed) or 12.06 (which requires medically documented persistent symptoms plus functional limitations not claimed).

At the fourth step, the ALJ found that Chesney could not return to her past work as a kitchen helper because it involved too much interpersonal contact for her limited tolerance. Tr. 18.

Although the ALJ did not expressly say so, her limiting Chesney to light work also precludes return to this medium job.

Therefore, at the fifth and final step, the ALJ considered the question of Chesney's residual functional capacity. She found that Chesney had the exertional ability to do light exertion work[1], reduced by her nonexertional limitations of depression, panic disorder with agoraphobia, and alcohol dependence to jobs which were simple, routine, and which required limited interaction with co-workers, supervisors, or the public. Based on this finding, the ALJ asked a vocational expert whether there were jobs which exist in the national economy that a hypothetical person of Chesney's age with those limitations could perform. The vocational expert testified that there were hundreds of thousands of positions existing in typical jobs meeting those requirements, such as cafeteria worker, large institutional cleaner, grader and sampler. Tr. 391-94. The ALJ accordingly concluded that Chesney was not disabled. See Plummer v. Apfel, supra, 186 F.3d at 428 (at step five, the burden

---

1. Light work requires occasional lifting objects up to 20 pounds, with frequent lifting or carrying of objects up to 10 pounds, **or** requires lifting less weight but involves a "good deal" of walking or standing or sitting and operating arm or leg controls; sedentary work requires the occasional lifting of objects up to 10 pounds and involves mostly sitting, with only occasional walking or standing. 20 C.F.R. § 404.1567. There were no questions to the vocational expert about whether the jobs he had chosen were classified as light work because of lifting requirements or because they involve a good deal of walking; the medical evidence does not show any restriction in either area.

of production shifts to the Commissioner to show existence of work for claimant in the national economy.)

Chesney's appeal hinges on whether the ALJ's hypothetical to the vocational expert adequately contained all of the functional limitations caused by her impairments. See Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir.2004); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir.1987). There are two parts to the inquiry: first, the hypothetical posed to the vocational expert must contain all the limitations the ALJ does find; second, substantial evidence must support the choice of the ALJ to reject limitations the ALJ does not include in the hypothetical. Ramirez illustrates the first requirement: there, the ALJ's hypothetical limitation of an individual to "simple one or two step tasks" did not adequately capture the limitations caused by the finding made by the ALJ that the claimant "often" had deficiencies in concentration, persistence, and pace. 372 F.3d 552-53. The ALJ's hypothetical did not run afoul of Ramirez.

In Chrupcala, the ALJ posed a formally valid hypothetical question, but erred in formulating the hypothetical question by rejecting without substantial evidence the claimant's nonexertional limitation of constant and severe pain. 829 F.2d at 1276. The ALJ did not make this error in Chesney's case either. Chesney's argument that no substantial evidence supports the ALJ's findings comes down to a claim that Palmer's evaluation should be preferred

9

to Tan's, but they are equally well supported and the ALJ is not required to accept the least favorable evaluation.

It must be noted that the typical question, whether the ALJ had substantial evidence from the record to reject the more extensive limitations a claimant testified to at her hearing, does not present itself here. Chesney's testimony before the ALJ was either consistent with her reports to Tan, Dolphin, and Palmer, or even more optimistic. Chesney mentioned without further elaboration that her right arm locked up from bursitis and that she couldn't raise it, Tr. 378-79, but the record is devoid of further testimony about how long this condition had lasted or could be expected to last. There was, notably, no attempt by counsel to relate this condition to Chesney's performance in the workplace, see Tr. 388. Chesney testified only that she would like to go to her family doctor, William Milroth, M.D., for cortisone shots every few months but was hampered in doing so by the cost of gas. Tr. 378. In fact, Doctor Milroth's records, Tr. 246-66, dating back to the 1980s, do not reflect any period during which Chesney received regular cortisone shots, and during the period for which Chesney claimed disability there were no records of shots at all. The ALJ accepted Chesney's testimony that her arm caused her pain, Tr. 14-15, but found no further relevant limitation. The evidence does not support any claim for one.

Chesney provided abundant evidence that drinking alcohol has caused her numerous personal problems, including criminal convictions. Several of what plaintiff's counsel notes are suicide attempts, Plaintiff's brief at 5, are incidents involving excessive alcohol use. Consistent with Chesney's statements to her medical care providers or examiners, Chesney testified at the ALJ hearing that she was in remission and does not claim, much less show, that in the period since her release from jail she suffers from any continuing impairment caused by alcohol use. See Petition of Sullivan, 904 F.2d 826, 844-45 (3d Cir.1990)(diagnosis of alcoholism without functional impairments does not warrant finding of disability).

The ALJ could also consider 1) the lack of opinion evidence from any doctor, treating or consulting, that Chesney was disabled; 2) the lack of evidence of any physical or psychological deterioration near in time before or after Chesney' alleged onset date (not to mention the evidence that the birth of her child had been a good thing for Chesney's psychological condition); 3) Chesney's testimony at the ALJ hearing that despite her alleged disability she was seeking employment and that her nonexertional limitations were not the cause of her most recent employment ending; 4) Chesney's personal opinion as expressed to Dolphin that counseling was not necessary for her to deal with her problems; 5) that there were obvious explanations other than disability for

Chesney's lack of substantial gainful activity, such as her criminal conviction and incarceration, her pregnancy and subsequent care for her newborn child, and her lack of a GED. The episodes of panic and discomfort in public Chesney testified to at the hearing, and her testimony about her unhappiness with her mental state (without distinguishing it in any way from her mental state while she was employed) do not discredit the ALJ's evaluation of the record.

Chesney is insured for disability purposes until September 30, 2008. It may be that in the period since the ALJ's decision Chesney's condition has deteriorated. But the ALJ did not lack substantial evidence in the record before her to find that Chesney was not disabled, and the ALJ's findings therefore provide an adequate basis for the Commissioner's decision.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: March 17, 2008

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record

12